STEPHEN ZELLER, Bar No. 265664
Email address: szeller@deconsel.com
CASEY JENSEN, Bar No. 263593
Email address: cjensen@deconsel.com
members of DeCARLO & SHANLEY,
a Professional Corporation
533 S. Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone (213) 488-4100
Telecopier (213) 488-4180

ATTORNEYS FOR PLAINTIFFS, CARPENTERS SOUTHWEST
ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES
FOR THE CARPENTERS SOUTHWEST TRUSTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation; and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS, <br><br> Plaintiffs, <br><br> v. <br><br> PARS INDUSTRIES, INC., a California corporation, doing business as WOODCRAFT COMPANY; MEHDI RAHMATI GOVARI, an individual, also known as MEHDI GOVARI; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. <br><br> COMPLAINT FOR: <br><br> 1. DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS - PARS INDUSTRIES, INC., dba WOODCRAFT COMPANY; <br><br> 2. DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION OF VACATION FUNDS HELD - MEHDI RAHMATI GOVARI, an individual, aka MEHDI GOVARI <br><br> 3. INJUNCTIVE RELIEF - PARS INDUSTRIES, INC., dba WOODCRAFT COMPANY; <br><br> 4. SPECIFIC PERFORMANCE TO CONDUCT AN AUDIT - PARS INDUSTRIES, INC., dba WOODCRAFT COMPANY; |

**JURISDICTION**

1.     This is a civil action to recover fringe benefit contributions, for defalcation of a fiduciary, injunctive relief to compel proper reporting and payment of contributions owed, and specific performance to conduct an audit. This action arises and jurisdiction of the court is founded as to Claims One, Two, Three and Four on

section 301 of the Labor-Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185a, and sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132 and 1145.

## FIRST CLAIM FOR RELIEF

## (DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS - PARS INDUSTRIES, INC., dba WOODCRAFT COMPANY; and DOES 1 THROUGH 5)

## PARTIES AND OTHERS

2.     CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation ("CSAC") is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of California. CSAC's principal place of business is in the County of Los Angeles, State of California.

3.     At all relevant times herein, the BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS were and now are fiduciaries and are duly authorized and acting trustees of those ERISA Trust Funds defined in paragraph six.

4.     CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are also authorized agents to act on behalf of the remaining Funds and entities (defined in paragraph nine) with respect to these delinquencies. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are sometimes collectively referred to as PLAINTIFFS.

5.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 10, are unknown to PLAINTIFFS, who therefore sue the defendants by such fictitious names, and PLAINTIFFS will amend this complaint to show their true names and capacities when they have been ascertained.

6.     At all relevant times Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and

Southwest Carpenters Training Fund, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186, and multiemployer plans within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

7.     At all relevant times the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, and the Contract Administration Trust for Carpenter-Management Relations, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186.

8.     At all relevant times the Carpenters-Contractors Cooperation Committee ("CCCC"), was and is a non-profit California corporation which exists pursuant to section 5(b) of the Labor Management Cooperation Act of 1978, 92 Stat. 2020 (1978), for the purposes set forth in section 302(c)(9) of LMRA, 29 U.S.C. § 186(c)(9).

9.     CSAC is the administrator of Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, and assignee of the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, the Contract Administration Trust for Carpenter-Management Relations, and the Carpenters-Contractors Cooperation Committee (collectively, the "PLANS"), and as such is a plan fiduciary within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

10.     The duly authorized and acting trustees or directors of each of the PLANS have also assigned to CSAC all their right, title and interest in and to any and all amounts due and owing to the respective PLANS by the employer as herein alleged.

11.     Southwest Regional Council of Carpenters and its affiliated local unions ("UNIONS") affiliated with United Brotherhood of Carpenters and Joiners of America, are labor organizations that are a party to the collective bargaining

1  agreements involved.

2      12.    At all relevant times employer, PARS INDUSTRIES, INC., a California

3  corporation, doing business as WOODCRAFT COMPANY, and DOES 1 through 5,

4  ("EMPLOYER") was and is a California corporation and contractor engaged in the

5  construction industry within the jurisdiction of the relevant UNIONS.

6      13.    At all relevant times, the following individual is listed with the Secretary

7  of State and Contractor's State License Board, was and is an officer of

8  EMPLOYER, as follows: MEHDI RAHMATI GOVARI, an individual, also known

9  as MEHDI GOVARI, as Responsible Managing Officer, Chief Executive Officer

10  and President; and DOES 6 through 10, ("INDIVIDUAL").

11

12                    **OPERATIVE ALLEGATIONS**

13      14.    On or about the date set forth thereon, EMPLOYER made, executed and

14  delivered to the UNION, multiple Single Project Agreement dated August 14, 2014,

15  December 3, 2014, December 10, 2014, October 23, 2015, November 10, 2015,

16  March 2, 2016, March 14, 2016, June 7, 2016, Letter of Assent of November 24,

17  2015, Letter of Assent of November 2, 2016, and Letter of Assent of June 27, 2016,

18  ("SINGLE PROJECT AGREEMENTS").  True and correct copies are attached

19  hereto marked as Exhibit "1", "2", "3", "4", "5", "6", "7", "8", "9", "10"& "11" and

20  incorporated herein by reference.  The SINGLE PROJECT AGREEMENTS were

21  for the projects known as follows:

22      a.    Seil Middle School, Whole Site Modernization at Bell Middle School
              (Ex.1);
23
        b.    Whole Site Modernization at Encanto Elementary School (Ex.2);
24
        c.    Patrick Henry High School (Ex.3);
25
        d.    Sherman Oaks Ctr. For Enriched Studies Conversion of Existing Class
26            (Ex.4);
27
        e.    Athletic Improvements Crawford High School (Ex.5);
28

4

f.     Whole Site Modernization at Taft Middle School (Ex.6);

g.     Science Classroom Renovations @ San Fernando High School (Ex.7);

h.     Culinary Arts at Mira Mesa High School (Ex.8);

i.     Modernization of Building 400 for Culinary Arts Program at Mira Mesa High School (Ex.9);

j.     Whole Site Modernization at Riley/New Dawn School (Ex.10);

k.     Longfellow Spanish Immersion Magnet School (Ex.11).

15.    Each SINGLE PROJECT AGREEMENT binds EMPLOYER to the terms and conditions of the Master Labor Agreement between the United General Contractors and the United Brotherhood of Carpenters and Joiners of America and the Southern California Conference of Carpenters, and the UNIONS, dated July 1, 2012, and any renewals or subsequent Master Labor Agreements, and the PLANS' agreements and any amendments, modifications, extensions, supplementations or renewals of the PLANS' agreements (collectively referred to as "AGREEMENTS"), for the term of the single project. The PLANS are third party beneficiaries of the MEMORANDUM AGREEMENT and Master Labor Agreements.

16.    CSAC is the administrator of Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, and assignee of the Construction Industry

17.    The AGREEMENTS require EMPLOYER to pay fringe benefit contributions at the rates set forth therein for every hour worked by employees performing services covered by the AGREEMENTS, and on account of all compensation paid to employees performing services covered by the AGREEMENTS.

18.    The AGREEMENTS require EMPLOYER to make the fringe benefit contributions by way of Employers Monthly Reports ("REPORTS") to the PLANS at their place of business in Los Angeles, California, on or before the 25th day of each month following the month during which the hours for which contributions are

due were worked or paid. Further, the AGREEMENTS specifically provide that the venue of an action to recover delinquent fringe benefit contributions shall be in the County of Los Angeles.

19.     In acknowledging both that the regular and prompt payment of employer contributions is essential to the maintenance of the PLANS, and the extreme difficulty, if not impracticability, of fixing the actual expense and damage to the PLANS when such monthly contributions are not paid when due, the AGREEMENTS provide that the amount of contractual damages to the PLANS resulting from a failure to pay contributions when due shall be presumed to be the sum of $30.00 per delinquency or 10 percent of the amount of the contributions due, whichever is greater. This amount shall become due and payable to the CSAC as liquidated damages in addition to the unpaid contributions or contributions paid late.

20.     EMPLOYER engaged workers who performed services covered by the AGREEMENTS and who performed labor on works of construction within the jurisdiction of the AGREEMENTS undertaken by EMPLOYER during the term of the AGREEMENTS.

21.     EMPLOYER has failed to pay the fringe benefit contributions in the manner prescribed by the AGREEMENTS, and there is now due and owing the PLANS from EMPLOYER the amounts set forth in Exhibit "12".

22.     The AGREEMENTS require EMPLOYER to pay for the expense of auditing EMPLOYER business records if an audit by the PLANS indicates that EMPLOYER failed to report and pay all contributions.

23.     As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for interest on the unpaid contributions from the first of the month following the date due, at the rate prescribed by the AGREEMENTS.

24.     The PLANS have received check stubs from an employee of EMPLOYER

and a true and correct copy of the Check Stub No. C9695 (social security number redacted) dated August 3, 2017, is attached as Exhibit "13"

25.    As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for an amount equal to the greater of interest on the unpaid contributions as prescribed by section 6621 of the Internal Revenue Code of 1954, 26 U.S.C. §6621, or liquidated damages provided for under the AGREEMENTS.

26.    It has been necessary for PLAINTIFFS to engage counsel to bring this action to recover the delinquent fringe benefit contributions.  Pursuant to the AGREEMENTS and section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), EMPLOYER is liable for reasonable attorneys' fees incurred in litigating this matter.

27.    The PLANS have complied with all conditions precedent.

28.    CSAC has, concurrently with the filing of this complaint, served a copy of same upon the Secretary of Labor and Secretary of the Treasury.

**SECOND CLAIM FOR RELIEF**

**(DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION**

**OF VACATION FUNDS HELD IN FIDUCIARY**

**CAPACITY - MEHDI RAHMATI GOVARI, an individual,**

**aka MEHDI GOVARI; and DOES 6 THROUGH 10)**

29.    PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 28 of their First Claim for Relief and allege a Second Claim for Relief against MEHDI RAHMATI GOVARI, an individual, also known as MEHDI GOVARI; and DOES 6 through 10 ("INDIVIDUAL") for Defalcation of Fiduciary by the Misappropriation of Vacation Funds Held in Fiduciary Capacity by EMPLOYER as follows:

30.    The Vacation Plan (which includes the supplemental dues)  was created by a collective bargaining agreement which consists of Trust Agreements and a Master

1  Labor Agreement (collectively, "AGREEMENTS"), between the United General
2  Contractors of California, Inc., the Building Industry Association of Southern
3  California, Inc., the Engineering Contractors' Association, Inc., and the Southern
4  California Contractors Association, Inc., on behalf of their respective eligible
5  members, and the district councils affiliated with the United Brotherhood of
6  Carpenters and Joiners of America,("UNIONS").

7     31.   The AGREEMENTS obligate EMPLOYER to include the amounts to be
8  paid to the Vacation Plan in the individual employees taxable income and to submit
9  the amount so deducted monthly to the Vacation Plan.

10    32.   PLAINTIFFS are informed and believe and, based on such information
11  and belief, allege that during the period of June 2016 through August 21, 2016,
12  INDIVIDUAL withheld funds from EMPLOYER'S employees.  INDIVIDUAL
13  failed to properly forward the withheld funds to the Vacation Plan, in an amount to
14  be proven at trial.  By acting in this manner INDIVIDUAL exercised discretionary
15  authority or control over the assets of the Vacation Plan and were thus a fiduciary.

16    33.   PLAINTIFFS are informed and believe and based on such information and
17  belief, allege that EMPLOYER was, and still is, justly and truly indebted to said
18  Vacation Plan (as to contributions, only) in an amount as set forth in Exhibit "14."

19    34.   In assuming the obligations to ascertain and report contributions to the
20  Vacation Plan, INDIVIDUAL entered into a fiduciary relationship with the
21  Vacation Plan, and were thereby obligated to pay the Vacation plan all monies
22  withheld from the employees wages.

23    35.   PLAINTIFFS are informed and believe and, based on such information
24  and belief, allege that by failing to segregate trust property, by misappropriating or
25  failing to account for trust property and by failing to timely tender funds withheld
26  from employees to the Vacation Plan, INDIVIDUAL breached his fiduciary
27  obligation and thus engaged in defalcation.

28    36.   At all times material herein, INDIVIDUAL is and was a fiduciary with

respect to the PLANS within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), because he exercised discretionary authority or control respecting management of disposition of assets of the PLANS.

37.    By engaging in the acts and omissions described herein, INDIVIDUAL caused assets of the PLANS to inure to the benefit of an employer, namely EMPLOYER, and not to the benefit of participants in the PLANS and their beneficiaries and not for defraying reasonable expenses of the PLANS, these actions were in violation of Section 403(c)(1) of ERISA, 29 U.S.C. §1103(c)(1).

### THIRD CLAIM FOR RELIEF

### (INJUNCTIVE RELIEF - PARS INDUSTRIES, INC., dba WOODCRAFT COMPANY; and DOES 1 THROUGH 5)

38.    PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 37 of their First and Second Claims for Relief and allege for a Third Claim for Relief as to PARS INDUSTRIES, INC., a California corporation, and doing business as WOODCRAFT COMPANY; and DOES 1 through 10 ("EMPLOYER"), for injunctive relief.

39.    ERISA section 502(a) provides in part: "A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan. . . ."

40.    Additionally, section 515 of ERISA (29 U.S.C. § 1145), as amended provides "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

41.    EMPLOYER has submitted Employers Monthly Reports ("REPORTS") to the PLANS late and/or without full contributions for work performed during the period August 2013 through January 2014, March 2014, May 2014, June 2014,

December 2014, January 2015 through May 2015, July 2015 through January 2016, May 2016 through August 2016, March 2017, June 2017 through August 2017.

42.     EMPLOYER has failed to submit REPORTS or remit full contributions to the PLANS for the period of July 2014 through the present, and may fail to furnish REPORTS or remit contributions to the PLANS for subsequent months.

43.     As a result of EMPLOYER'S failure to submit reports and/or pay contributions on the dates on which its contributions were due, EMPLOYER may have become indebted to the PLANS for contributions, liquidated damages, and interest.

44.     PLAINTIFFS timely notified EMPLOYER by letter of each delinquency and of the assessment of each delinquency, and repeatedly demanded payment of the delinquencies.  To date, EMPLOYER has failed to pay the delinquencies owed to the PLANS.

45.     EMPLOYER'S failure to promptly pay its delinquencies to the PLANS on the dates on which such contributions were due is a violation of the AGREEMENTS.

46.     EMPLOYER'S delinquencies to PLAINTIFFS have occurred from August 2013 and are continuing.

47.     EMPLOYER will continue to refuse to submit reports and/or fail to pay contributions to the PLANS and thereby create future unpaid delinquencies during the remaining terms of the AGREEMENTS.  Unless EMPLOYER is enjoined from failing to make its contributions and restrained from incurring delinquencies, the PLANS will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the PLANS will be required to bring a multiplicity of actions at law to recover the missing reports and/or the delinquencies as they occur, to the PLANS' great expense and hardship.  Further, unless EMPLOYER is so enjoined, based on experiences with other similarly situated employers, the PLANS have little prospect of ever collecting on the additional delinquencies incurred as

1   such employers frequently petition for bankruptcy, dissolve or otherwise cease

2   doing business as a result of the financial difficulties involved in their

3   delinquencies, and the PLANS are unable thereafter to collect delinquencies thus

4   owing.

**FOURTH CLAIM FOR RELIEF**

**(SPECIFIC PERFORMANCE TO CONDUCT AN AUDIT -**

**PARS INDUSTRIES, INC., dba WOODCRAFT COMPANY;**

**and DOES 1 THROUGH 5)**

9   48.   PLAINTIFFS reallege and incorporate herein by reference each and every

10   allegation contained in paragraphs 2 through 47 of its First, Second and Third

11   Claims for Relief and allege for a Fourth Claim for Relief as to PARS

12   INDUSTRIES, INC., a California corporation, and doing business as

13   WOODCRAFT COMPANY; and DOES 1 through 10 ("EMPLOYER"), for

14   Specific Performance.

15   49.   This action for specific performance arises and jurisdiction of the court is

16   founded on section 301 of the Labor-Management Relations Act of 1947 (LMRA")

17   (29 U.S.C. §185A) and section 502 of the Employee Retirement Income Security

18   Act of 1974 ("ERISA"), as amended (29 U.S.C.A §1132).

19   50.   The AGREEMENTS require EMPLOYER to permit the PLANS to audit

20   and copy all EMPLOYER's records to determine whether the EMPLOYER has

21   made the appropriate contributions to the PLANS.

22   51.   The AGREEMENTS provide that the PLANS have the specific authority

23   to examine EMPLOYER's job cost records, general check registers and check stubs,

24   bank statements and canceled checks, general ledgers, cash disbursements ledgers,

25   worker compensation insurance reports, financial statements, corporate income tax

26   returns, employee time cards, payroll journals, individual earnings records of all

27   employees, forms W-2, 1099 and 1096 remitted to the U.S. Government, California

28   quarterly state tax returns (DE-3's), health and welfare and pension reports for all

other trades, cash receipts' journal, copies of all contracts and all material invoices.

52.     The PLANS have required access to EMPLOYER's business records for the purpose of conducting an audit.

53.     EMPLOYER has failed and/or refuses to allow the PLANS to complete such an audit.

WHEREFORE, PLAINTIFFS pray for judgment as follows:

**FOR PLAINTIFFS' FIRST CLAIM FOR RELIEF**

**(DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT**

**CONTRIBUTIONS - PARS INDUSTRIES, INC., dba**

**WOODCRAFT COMPANY; and DOES 1 THROUGH 5)**

1.     For unpaid contributions in the sum of $6,152.64;

2.     For interest and liquidated damages, as provided in the AGREEMENTS;

3.     For audit costs;

4.     For a statutory amount equal to the greater of the interest on unpaid contributions which were owing as of the time of the filing of the complaint herein (at the rate prescribed by law), or liquidated damages as provided in the AGREEMENTS, in an amount to be determined.

**FOR PLAINTIFFS' SECOND CLAIM FOR RELIEF**

**(DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION**

**OF VACATION FUNDS HELD IN FIDUCIARY CAPACITY -**

**MEHDI RAHMATI GOVARI, an individual,**

**aka MEHDI GOVARI; and DOES 6 THROUGH 10)**

1.     That the court determine that INDIVIDUAL is liable for the funds withheld from employees for the Vacation Plan in the sum of $1,637.18; and

2.     That the court determine the remaining issues and render judgment for PLAINTIFFS for the amount of debt, plus interest as proven at trial.

///

12

**FOR PLAINTIFFS' THIRD CLAIM FOR RELIEF**

**(INJUNCTIVE RELIEF - PARS INDUSTRIES, INC., dba**

**WOODCRAFT COMPANY; and DOES 1 THROUGH 5)**

1.     For issuance of both preliminary and permanent injunctions restraining and enjoining EMPLOYER, for so long as EMPLOYER remains bound to make any payments or contributions to the PLANS, from failing to deliver or cause to be delivered to PLAINTIFFS, no later than the 25th day of the month:

      a.   A complete, truthful, and accurate Employer's Monthly Report to Trustees covering all employees of EMPLOYER employed during the previous month under the AGREEMENTS;

      b.   A declaration from a responsible employee of EMPLOYER attesting from his or her personal knowledge under pain and penalties of perjury to the completeness, truthfulness, and accuracy for the Monthly Report; and

      c.   Check for the full amount owing on the Monthly Report.

2.     For payment of the Employers Monthly Reports to Trustees for the months of July 2014 through the present, and so long as EMPLOYER remains bound to make any payments of contributions to the PLANS.

**FOR PLAINTIFFS' FOURTH CLAIM FOR RELIEF**

**(SPECIFIC PERFORMANCE TO CONDUCT AN AUDIT - PARS**

**INDUSTRIES, INC., dba WOODCRAFT COMPANY;**

**and DOES 1 THROUGH 5)**

1.     That EMPLOYER be compelled to forthwith submit to completion of an audit of EMPLOYER's business records covering the period from February 1, 2017 through the present by the PLANS' auditors at the premises of EMPLOYER during business hours, at a reasonable time or times, and to allow the auditors to examine and copy the following books, records, papers, documents and reports of EMPLOYER:  all job cost records, general check register and check stubs, bank

statements and canceled checks, general ledgers, worker compensation insurance reports, financial statements, cash disbursements ledgers, corporate income tax returns, employee time cards, payroll journals, individual earnings records of all employees, forms W-2, 1099 and 1096 remitted to the U.S. Government, California quarterly state tax returns (DE-3's), health and welfare and pension report for all other trades, cash receipts' journal, copies of all contracts, and all material invoices;

### AS TO ALL OF PLAINTIFFS' CLAIMS FOR RELIEF:

1. For reasonable attorneys' fees;

2. For costs of this action;

3. For further contributions according to proof; and

4. For such other and further relief as the court deems proper.

Dated: January __30__, 2019

DeCARLO & SHANLEY,
a Professional Corporation

By:_____
STEPHEN ZELLER
Attorneys for Plaintiffs,
CARPENTERS SOUTHWEST
ADMINISTRATIVE CORPORATION
and BOARD OF TRUSTEES FOR THE
CARPENTERS SOUTHWEST TRUSTS