# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PARS INDUSTRIES, INC., <br><br> Defendants. | Case No.: CV 19-00739-CJC(ASx) <br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [Dkt. 16] |

## I.  INTRODUCTION

Plaintiffs Carpenters Southwest Administrative Corporation and the Board of Trustees for the Carpenters Southwest Trusts brought this action against Defendants Pars Industries, Inc. d/b/a Woodcraft Company ("Woodcraft Company") and Mehdi Rahmati Govari.  (Dkt. 1 [Complaint, hereinafter "Compl."].)  Before the Court is Plaintiffs'

motion for default judgment. (Dkt. 16 [hereinafter "Mot."].) For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

## II. BACKGROUND

Plaintiffs are fiduciaries and administrators of the Southwest Carpenters Health and Welfare Trust, the Southwest Carpenters Pension Trust, the Southwest Carpenters Vacation Trust, and the Southwest Carpenters Training Fund. (Compl. ¶¶ 2–3, 9.) These trusts are express trusts pursuant to section 302 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186. (*Id.* ¶ 6.) They are also multiemployer plans within the meaning of section 3 of the Employee Retirement Income Security Act of 1984 ("ERISA"). (*Id.*)

Defendant Woodcraft Company is a contractor engaged in the construction industry. (*Id.* ¶ 12.) Defendant Mehdi Rahmati Govari is the managing officer, chief executive officer, and president of the Woodcraft Company. (*Id.* ¶ 13.) The Woodcraft Company employs carpenters who fall under collective bargaining agreements negotiated by the Southwest Regional Council of Carpenters and its affiliated local unions (collectively, the "Union"). (*Id.* ¶¶ 11–12.) At issue in this case are the Woodcraft Company's obligations under these collective bargaining agreements, to which the trust funds administered by the Carpenters Southwest Administrative Corporation are third party beneficiaries. (*See id.* ¶ 16.)

From August 2014 to June 2016, the Woodcraft Company entered into eleven single project agreements with the Union. (*Id.* ¶ 14.) These projects primarily involved

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for July 8, 2019 at 1:30 p.m. is hereby vacated and off calendar.

construction at schools. (*Id.*) In these single project agreements, the Woodcraft Company agreed to be bound by the terms and conditions of the Master Labor Agreement between the United General Contractors and the Union, dated July 1, 2012. (*Id.* ¶ 15.)

Under the Master Labor Agreement, the Woodcraft Company must pay fringe benefit contributions at designated rates for every hour worked by carpenter employees performing services covered by the collective bargaining agreements. (*Id.* ¶¶ 17–18.) The Woodcraft Company must make these payments through monthly reports on or before the twenty-fifth day of the following month. (*Id.* ¶ 18.) If the Woodcraft Company fails to timely pay these fringe benefit contributions, Plaintiffs are entitled to both the unpaid contributions and liquidated damages, which are the greater of $20 per delinquency or 10% of the contributions due. (*Id.* ¶ 19; Dkt. 16-2 [Declaration of Chris Hidalgo, hereinafter "Hidalgo Decl."] ¶ 11.) Under the terms of the agreements, interest accrues at a rate of 7% of the unpaid contributions. (*Id.* ¶ 12.) The Master Labor Agreement also requires the Woodcraft Company to pay for the expense of an audit of its business records if the audit reveals that it failed to report and pay all contributions. (Compl. ¶ 22.)

Before filing this lawsuit, Plaintiffs obtained check stubs from an employee of the Woodcraft Company. (*Id.* ¶ 24.) Plaintiffs discovered that the Woodcraft Company had failed to make the required fringe benefit payments. (*Id.* ¶¶ 20–21.) The Woodcraft Company allegedly owes $6,206.97 in contributions, $3,555.01 in liquidated damages, $210.00 in audit fees, and $2,003.46 in interest. (Hidalgo Decl. ¶ 13; *see also* Dkt. 16-19 [Statement of Amounts Due].) Plaintiffs further assert that Mr. Govari, as an officer of the Woodcraft Company, is personally liable because he improperly withheld vacation contributions. (Compl. ¶¶ 29–37.) From June 1, 2016 through August 21, 2016, Mr. Govari allegedly withheld funds totaling $1,637.18 from the wages of Woodcraft

Company employees and failed to properly forward the withheld funds to Plaintiffs. (Hidalgo Decl. ¶ 15.)

Plaintiffs filed this lawsuit on January 31, 2019 in federal court. (Dkt. 1.) Plaintiffs assert three causes of action against the Woodcraft Company: (1) failure to pay fringe benefit contributions, (2) injunctive relief, and (3) specific performance to conduct an audit. Plaintiffs assert a single claim against Mr. Govari for defalcation by a fiduciary for his misappropriation of vacation funds.

### III. ANALYSIS

#### A. Jurisdiction and Service of Process

In considering whether to enter default judgment against Defendants, the Court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). In doing so, a court must also determine whether there was sufficient service of process on the party against whom default judgment is requested. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992).

The Court has jurisdiction over this action. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs assert claims under section 301 of the LMRA, 29 U.S.C. § 185a, and sections 502 and 514 of ERISA, 29 U.S.C. §§ 1132, 1145. (Compl. ¶ 1.) The Court has personal jurisdiction over Defendants because the Woodcraft Company is a California corporation and Mr. Govari appears to be a California resident. (*See id.* ¶ 13.) There is also adequate service of process pursuant to Federal Rule of Civil Procedure 4(h)(1)(A) and California Code of Civil Procedure § 415.20(a). Plaintiffs served the Complaint on Defendants through substituted service

by leaving copies with the person in charge at Defendants' place of business on March 20, 2019 and then mailing copies on March 25, 2019. (Dkts. 7, 8.)

### B.     Procedural Requirements for Default Judgment

Federal Rule of Civil Procedure 55(b)(2) and this Court's Local Rule 55-1 "require that applications for default judgment set forth the following information: (1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether the person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required." *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

Here, Plaintiffs have set forth the required information: (1) the Clerk entered default against Defendants on April 29, 2019, (Dkt. 14), (2) the default was entered as to the Complaint, (*id.*), (3) Defendants are not infants or incompetent persons, (Dkt. 16-16 [Declaration of Stephen Zeller, hereinafter "Zeller Decl."] ¶¶ 8–9), (4) the Soldiers' and Sailors' Relief Act of 1940 does not apply,[2] (*id.* ¶¶ 5–7, 9), and (5) the notice requirements of Rule 55(b)(2) do not apply because Defendants have not appeared in this action, but Plaintiffs have advised Defendants that they would be moving for default judgment, (*id.* ¶ 10). Accordingly, the procedural requirements for default judgment are satisfied.

---

[2] Plaintiffs indicated they would submit a supplemental declaration affirming that Mr. Govari is not a member of the United States Army and United States Coast Guard. (*See* Zeller Decl. ¶ 7.) They have not yet done so. Nevertheless, since the Court ultimately denies Plaintiffs' motion for default judgment with respect to Mr. Govari, this issue is moot.

### C. Merits of the Motion for Default Judgment

After entry of default, a court may grant a default judgment on the merits of the case. Fed. R. Civ. P. 55(a)–(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court may consider the following factors articulated in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), in exercising such discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. Because default has been entered in this case, the Court must construe as true all of "the factual allegations of the complaint, except those relating to the amount of damages." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Here, the *Eitel* factors weigh in favor of entry of a default judgment against Defendants.

#### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor favors the entry of default judgment. If the motion for default judgment is not granted, Plaintiffs "would be denied the right to judicial resolution of the claims presented." *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). By choosing to default rather than defend, Defendants are "deemed to have admitted the truth of [Plaintiffs'] averments," *Philip Morris*, 219 F.R.D. at 499, thereby establishing liability. Absent the entry of default judgment against Defendants, Plaintiffs would be prejudiced, as Plaintiffs would be left without the ability to seek relief to which they are entitled.

**2. & 3. The Merits of the Claim and the Sufficiency of the Complaint**

The second and third *Eitel* factors, taken together, require that a plaintiff state a claim on which it may recover. *Philip Morris*, 219 F.R.D. at 499. Here, Plaintiffs seek an entry of default judgment for their claims against the Woodcraft Company and Mr. Govari.

*a.   Woodcraft Company*

Plaintiffs seek an entry of default judgment against the Woodcraft Company for its failure to pay fringe benefit contributions. Under section 515 of ERISA, every employer who is obligated to make contributions to a multiemployer plan under a collective bargaining agreement "shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

Plaintiffs have established that the Woodcraft Company is an employer who is obligated to make contributions to a multiemployer plan. Mansour Rahmati, the vice president of the Woodcraft Company, signed and executed single project agreements on the company's behalf. (Dkt. 16-7 [Declaration of Norma Guerrero, hereinafter "Guerrero Decl."] ¶ 10; Dkt. 16-8 Exs. 1–11.) The single project agreements incorporate the collective bargaining agreement and the trust agreements. (Guerrero Decl. ¶ 12; Dkt. 16-8 Exs. 1–11.) Under those agreements, the Woodcraft Company is obligated to submit a monthly report by the twenty-fifth day of every month that specifies the number of hours worked by each carpenter employee in the month prior. (Guerrero Decl. ¶ 14; Dkt. 16-8 Exs. 1–11.) The agreements also require the Woodcraft Company to pay contributions to the fund for each hour worked by carpenter employees and send a check for the total amount due when it submits the monthly reports. (Guerrero Decl. ¶ 14; Dkt. 16-8 Exs. 1–11.) The agreements further provide that the Woodcraft Company must provide the

union and trust funds with access to its "employee records, payroll records, time sheets, certified payroll records, paychecks, daily logs and any other appropriate documentation . . . to monitor compliance with the terms of" the agreements. (*Id.*)

Plaintiffs have further established that the Woodcraft Company has failed to make contributions in accordance with the terms of the collective bargaining agreement and the trust agreements. The Woodcraft Company submitted its reports late or without payment for contributions in the following periods: December 2014 through May 2015, July 2015 through January 2016, May 2016 through August 2017, May 2018, and August 2018 through January 2019. (Guerrero Decl. ¶ 19.) Plaintiffs have requested an audit of the Woodcraft Company's books and records, but the Woodcraft Company has failed to produce the necessary books and records for an audit, despite repeated requests. (Hidalgo Decl. ¶¶ 16–17.) Plaintiffs have stated a valid claim against the Woodcraft Company for failure to make fringe benefit payments.

        b.   Mr. Govari

Plaintiffs seek an entry of default judgment against the other Defendant, Mr. Govari, for defalcation by a fiduciary under ERISA, due to his alleged misappropriation of vacation contributions. Under ERISA, a fiduciary is a person who "exercises . . . any authority or control respecting management or disposition of [a plan's] assets." 29 U.S.C. § 1002(21)(A). Plaintiffs assert Mr. Govari is a fiduciary because the unpaid vacation contributions are trust fund assets and Mr. Govari exercised control over the withheld contributions. (Mot. at 6–7.) To support its claim that unpaid contributions are plan assets, Plaintiffs cite *Board of Trustees of the Airconditioning & Refrigerators Industry Health & Welfare Trust Fund v. J.R.D. Mechanical Services*, 99 F. Supp. 2d 1115 (C.D. Cal. 1995). *J.R.D. Mechanical Services*, however, has been largely overruled. The Ninth Circuit has since held that unpaid contributions by employers to

employee benefit funds are *not* plan assets. *See Glazing Health & Welfare Fund v. Lamek*, 896 F.3d 908, 910 (9th Cir. 2018); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000). An employer's contractual requirement to contribute to an employee benefits trust fund does not make it a fiduciary of unpaid contributions. *Glazing*, 896 F.3d at 910. Plaintiffs do not address this change in authority and fail to explain how Mr. Govari is a fiduciary in light of *Glazing* and *Cline*. Accordingly, to the extent Plaintiffs seek an entry of default judgment against Mr. Govari, Plaintiffs' motion for default judgment is **DENIED**. Plaintiffs have not established that they assert a valid claim against Mr. Govari.

### 4. The Sum of Money at Stake

The fourth *Eitel* factor requires the Court to consider the amount of money at stake in this action. *Eitel*, 782 F.2d at 1471–72. Here, Plaintiffs seek $6,206.97 in unpaid contributions, $3,555.01 in liquidated damages, $210.90[3] in audit fees, and $2,003.46 in interest, plus attorneys' fees and costs. These amounts are appropriate for resolution on default judgment because they are verifiable and simple to calculate.

### 5. & 6. The Possibility of a Dispute Concerning Material Facts and Whether the Default Was Due to Excusable Neglect

The fifth and sixth *Eitel* factors require the Court to determine whether it is likely that there would be a dispute as to material facts and whether Defendants' failure to litigate is due to excusable neglect. The dispute here is relatively straightforward, involving the Woodcraft Company's obligations to pay fringe benefit contributions under

---

[3] In their briefing and exhibits, Plaintiffs inconsistently refer to this figure as either $210.00 or $210.80, but they calculate their attorneys' fees request based on $210.90. The audit invoice, however, indicates that the total audit fees are $210.90. (*See* Dkt. 19 Ex. 21.)

the collective bargaining agreement, so there is unlikely to be a dispute concerning material facts, particularly given Plaintiffs' documentation that the Woodcraft Company has failed to pay contributions and submit timely reports. There is no indication that the Woodcraft Company's default was due to excusable neglect, as it has failed to appear altogether despite having received notice of the Complaint.

### 7. The Public Policy Favoring Decisions on the Merits

Because public policy dictates that courts prefer to rule on the merits, this factor will always weigh against granting a motion for default judgment. Nonetheless, Defendants' choice not to defend themselves renders a decision on the merits "impractical, if not impossible." *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Since the other *Eitel* factors all weigh in favor of granting default judgment, the Court will exercise its discretion to grant Plaintiffs' motion for default judgment with respect to the Woodcraft Company.

### D.   Relief Sought

Once a court concludes that default judgment is appropriate, it must determine what damages or other relief is warranted. Plaintiffs carry the burden of proving their damages and requests for other relief. *Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Plaintiffs seek $6,206.97 in unpaid contributions, $2,003.46 in interest, $3,555.01 in liquidated damages, $210.90 in audit fees, plus attorneys' fees and costs. Plaintiffs also seek an order compelling the Woodcraft Company to submit to an audit.

*1. Unpaid Contributions.* Plaintiffs seek $6,206.97 in unpaid contributions from the Woodcraft Company. Plaintiffs submit a declaration that they performed a check stub

audit for the period from June 1, 2016 to August 21, 2016. (Hidalgo Decl. ¶ 8.) This audit indicated that the Woodcraft Company underreported the actual hours worked by its carpentry employees. (*Id.*; Dkt. 19 Ex. 21 [Audit Invoice]. ) Plaintiffs' records further indicate that the Woodcraft Company owes $6,206.97 in contributions. (*Id.* ¶ 13; Dkt. 16-4 Exs. 22–23.) Plaintiffs are awarded $6,206.97 in unpaid contributions.

  2. *Interest.* Plaintiffs seek $2,003.46 in interest on the unpaid contributions from the Woodcraft Company. ERISA provides for "interest on unpaid contributions" at a rate provided for under the plan. 29 U.S.C. § 1132(g)(2). Pursuant to the trust agreements, interest is accrued at the rate of 7% of the unpaid contributions. (Hidalgo Decl. ¶ 12.) Plaintiffs have calculated interest on the unpaid contributions as $443.53 for the period from the due date to the audit billing date and $1,559.93 for the period from the audit billing date to the hearing date on the motion for default judgment. (Dkt. 16-19 [Statement of Amounts Due].) Plaintiffs are awarded a total of $2,003.46 in interest.

  3. *Liquidated Damages.* Plaintiffs seek $3,555.01 in liquidated damages. (*Id.*) Under the ERISA statute, plaintiffs may recover either liquidated damages and interest or double the interest amount. 28 U.S.C. § 1132(g)(2); *Bd. of Trs. of Laborers Health & Welfare Tr. Fund for N. Cal. v. Perez*, 2011 WL 6151506, at *10 (N.D. Cal. Nov. 7, 2011); *see also Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 654 (7th Cir. 2001) (holding that section 1132(g)(2) is a penalty statute which permits ERISA plans to choose between either liquidated damages plus interest, or double interest). Here, Plaintiffs seek to recover liquidated damages and interest. Pursuant to the Master Labor Agreements, liquidated damages are assessed in the amount of $20 per delinquency or 10% of the delinquency, whichever is greater. (Hidalgo Decl. ¶ 11.) Plaintiffs submit documentation indicating that liquidated damages total to $3,555.01. (Dkt. 16-4 Ex. 22.) The Court will award $3,555.01 in liquidated damages, pursuant to 28 U.S.C. § 1132(g)(2)(C) and the Master Labor Agreement.

*4. Audit Fees.* Plaintiffs seek $210.90 in audit fees. When awarding judgment in favor of plans under ERISA, the Court may grant "such other legal . . . relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). Under the trust agreements, audit costs are calculated at $75 per hour. (Hidalgo Decl. ¶ 10.) Plaintiffs submit documentation that the audit for the period from June 1, 2016 to August 21, 2018 generated $210.90 in audit fees. (Dkt. 19 Ex. 21 [Audit Invoice].) Plaintiffs are entitled to $210.90 in audit fees.

*5. Attorneys' Fees.* Plaintiffs also seek $1,224.98 in attorneys' fees. ERISA mandates the award of attorneys' fees where a plan succeeds in an action to recover contributions. 28 U.S.C. § 1132(g)(2). Under Local Rule 55-3, in default judgments where the award is between $10,000.01 and $50,000.00, attorneys are entitled to a fee of $1,200 plus 6% of the amount over $10,000.00. Here, the total delinquency is $10,416.41,[4] so the amount over $10,000.00 is $416.41. The Court therefore awards $1,224.98 in attorneys' fees ($1,200.00 + (.06 x $416.41)).

*6. Costs.* Plaintiffs also seek their costs of suit. Plaintiffs are entitled to reasonable costs in a sum pursuant to a Bill of Costs which may be filed in accordance with Local Rule 54-2.1.

*7. Order to Submit to Audit.* Lastly, Plaintiffs seek an order that the Woodcraft Company produce its books and records for an audit. ERISA provides for appropriate equitable relief. 29 U.S.C. § 1132(g)(2). In particular, courts have recognized the right of employee benefit plans to conduct audits. *See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 581 (1985) ("Given Congress' vision of the proper administration of employee benefit plans under ERISA, we have little difficulty holding that the audit requested by Central States is well within the authority of the

---

[4] This is calculated from $6,206.97 in unpaid contributions, $443.53 in interest from the due date to the audit billing date, the $3,555.01 in liquidated damages, and $210.90 in audit fees.

trustees as outlined in the trust documents."); *see also Perez*, 2011 WL 6151506, at *15 (granting request for an order compelling employer to submit to an audit on a motion for default judgment).  Here, Plaintiffs seek an order compelling the Woodcraft Company to submit to an audit of their business records for the period from February 1, 2017 to the present.[5]  This order is appropriate to ensure the Woodcraft Company's compliance with its obligations under the collective bargaining agreement and the trust agreements. Accordingly, the Court will also grant Plaintiffs their requested relief.

//

---

[5] Specifically, Plaintiffs seek to require the Woodcraft Company to allow auditors to examine and copy the following: "all job cost records, general check register and check stubs, bank statements and canceled checks, general ledgers, worker compensation insurance reports, financial statements, cash disbursements ledgers, corporate income tax returns, employee time cards, payroll journals, individual earnings records of all employees, forms W-2, 1099 and 1096 submitted to the U.S. Government, California quarterly state tax returns (DE-3's), health and welfare and pension report for all other trades, cash receipts' journal, copies of all contracts and all material invoices."  (*See* Dkt. 16-21 [Proposed Judgment].)  This request is consistent with the Woodcraft Company's obligations under the single project agreements. (*See* Dkt. 16-8 Exs. 1–11 ["The Contractor agrees to provide the Union and/or the Trust Funds access upon request to employee records, payroll records, time sheets, certified payroll records, paychecks, daily logs and any other appropriate documentation of the Contractor or his subcontractors to monitor compliance with the terms of this Agreement."].)

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' motion for default judgment against Mr. Govari is **DENIED**, as Plaintiffs have failed to establish that Mr. Govari is a fiduciary under ERISA.  Plaintiffs' motion for default judgment against the Woodcraft Company is **GRANTED**.  The Court awards Plaintiffs $6,206.97 in unpaid contributions, $2,003.46 in interest, $3,555.01 in liquidated damages, $210.90 in audit fees, and $1,224.98 in attorneys' fees, for a total of $13,201.32, plus reasonable costs in a sum pursuant to a Bill of Costs filed with the Clerk's Office.  The Court also orders the Woodcraft Company to submit to an audit for the period from February 1, 2017 to the present.  A judgment consistent with this Order will be issued.

DATED:   June 27, 2019

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE